**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FILED

AT ALBUQUERQUE NM

JAN 2 3 2001

SYLVESTER CLARK,

      Plaintiff,

ROBERT M. MARCH
CLERK

vs.

**Civ. No. 00-1017 DJS/LFG-ACE**

HOLNAM, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment filed December 1, 2000 and Defendant's Motion for Rule 11 Sanctions filed January 3, 2001.  Plaintiff filed this action under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. @101 et seq., seeking to enforce promises of severance benefits made to him by his former employer.  Defendant asserts, *inter alia*, that the clear meaning of the ERISA agreement does not entitle Plaintiff to severance benefits. Upon review of the pleadings and being otherwise advised in the premises, the Court finds that Defendant's Motion for Summary Judgment is well taken and will be granted.  The Court further finds that Defendant's Motion for Sanctions is not well taken and will be denied.

The following facts are undisputed.  Plaintiff worked at

1

Holnam Inc.'s cement plant in Tijeras, New Mexico from 1972 to 1992 as an hourly employee.  He was promoted to the position of Mill Supervisor, a salaried position, on July 1, 1992.  As a regular, full-time employee, Plaintiff was the potential beneficiary of certain ERISA-qualified benefits.  Among those benefits were "Separation Policies" providing severance benefits to eligible regular, full-time employees who were involuntarily separated from their employment by Holman.

In early 1994, Holnam negotiated with Rio Grande Portland Cement Corporation ("Rio Grande"), a New Mexico corporation, for the sale of its Tijeras plant.  After finalizing the purchase agreement with Rio Grande, Holnam terminated its Tijeras employees, including Plaintiff, effective June 30, 1994.  Rio Grande resumed operations at the Tijeras plant immediately, rehiring Plaintiff and other employees.  Plaintiff continued working for Rio Grande without interruption for the next five years.  He resigned from Rio Grande on November 30, 1999.

It is also undisputed that Plaintiff was subject to Holnam's "Separation Policy: Salaried Employees," as discussed below. Further, it is undisputed that on April 7, 1994, Holnam Corporate Human Resources Department provided Plaintiff a copy of a "Release Waiver, Covenant Not to Sue, and Agreement for Severance Benefits" (Release).

Plaintiff filed his complaint on July 13, 2000.  He alleges:

2

(1) wrongful denial of severance benefits under a qualified "ERISA Plan"; (2) breach of contract; and (3) violation of the implied covenant of good faith and fair dealing.

### Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When reviewing a grant of summary judgment, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999) cert. denied 528 U.S. 815.

Further, the court is bound by the standard of review for a denial of benefits under an ERISA plan. 29 U.S.C. Section 1132(a)(1)(B) does not set out the appropriate standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989). In Firestone Tire & Rubber Co. v. Bruch, the Supreme Court looked to principles of trust law to determine the appropriate standard. Id. at 111. The Court held that "a denial of benefits challenged under Section 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. If the plan gives discretionary authority, review is under the arbitrary and capricious standard. Winchester v. Prudential Life

3

Ins. Co. of America, 975 F.2d 1479, 1483 (10th Cir. 1992); Woolsey
v. Marion Laboratories, Inc., 934 F.2d 1452, 1457 (10th Cir. 1991).
It is not clear from the record which standard applies.  However,
as discussed below, whichever standard of review applies, Plaintiff
cannot prevail.

**The ERISA Plan at issue does not provide severance benefits to**

**the Plaintiff**.

The award of benefits under an ERISA plan is governed by the
language of the plan itself. 29 U.S.C. Sec. 1132(a)(1)(B).   When
interpreting ERISA plans, courts look to the general principles of
contract construction law.  DeBoard v. Sunshine Mining and Refining
Company, 208 F.3d 1228, 1240 (10th Cir. 2000); Denzler v. Questech,
Inc., 80 F.3d 97, 101 (4th Cir. 1996); Massachusetts Mut. Life Ins.
Co. v. Russell, 473 U.S. 134, 148 (1985)(referring to ERISA plan
benefits as "contractually authorized benefits") Whether a contract
is ambiguous is a question of law determined from the face of the
plan. Denzler, 803 F.3d at 101.  If the plan language is ambiguous,
the court will look to extrinsic evidence.  DeBoard, 208 F.3d at
1240.

Holnam's "Separation Policy: Salaried Employees" provides
that:

3.1 Employees Eligible for Severance

no employee shall be eligible for severance hereunder in the
event of a merger, divestiture or other disposition of a
facility, operation, product line, subsidiary or division,
etc., where the purchaser or new entity (i) offers employment

4

which is subsequently accepted by such employee, or (ii) elects to continue the employment of such employee, as applicable." Defendant's Memorandum, Exhibit A.

Defendant argues correctly, that under the clear reading of this provision, Plaintiff is ineligible for severance benefits. Plaintiff was terminated at the time of Holnam's sale to Rio Grande. Plaintiff was offered employment with Rio Grande at the same plant. Plaintiff accepted the employment after his termination from Holnam and continued working for Rio Grande in the same Tijeras plant for the next five years.[1]

Plaintiff argues that the following section authorizes Plaintiff's eligibility for severance pay. It states:

If an employee separated under the provisions of this Section 3.1 is eligible for and elects to take retirement on or after the last day work, such employee shall be nevertheless entitled to severance pay pursuant to Section 3.3... Plaintiff's Response, Exhibit 2.

Plaintiff asserts he received retirement benefits from the Defendant. Plaintiff argues that the meaning of this provision is that all retiring persons are eligible for severance. For the Court to accept Plaintiff's interpretation it must give no meaning to 3.1 provision that rehired employees are excluded from receiving severance benefits. This is not in line with the basic principles

---

[1]Defendant has submitted evidence that Plaintiff's first date of work with Rio Grande was July 1, 1994, the day after he was terminated by Defendant. Plaintiff appears to dispute this fact. Assuming without deciding that Plaintiff has controverted this fact, the court finds that it is not material to the outcome of the issue before the court.

of contract interpretation. <u>See</u> Restatement (Second) of Contracts @ 203(a)(1979)("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms...is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.") Further, a reasonable reading of the retirement clause is that persons, otherwise eligible for severance benefits, would not become ineligible if they accepted retirement.

Further, such a reading is in line with a previous case decided in this district. <u>See</u> <u>Awbrey v. Penzoil Co.</u>, 961 F.2d 928 (10th Cir. 1992). In <u>Awbrey</u> the court noted a policy that courts have interpreted severance pay plans as forms of unemployment benefits, and not as bonus payments to be received at termination. <u>Id</u>. at 931. On appeal, the Tenth Circuit affirmed in all respects, and noted that:

> Another relevant point regarding plaintiffs' claims for severance pay is that none of them missed any work or suffered any loss of income. Under such circumstances, courts have found that severance pay would be an unjustified windfall to the employee.

<u>Id</u>.

Even if the court found the provision ambiguous, the extrinsic evidence before the Court clearly demonstrates that the Plaintiff is not eligible for severance benefits. Plaintiff was provided with a Release on April 7, 1994. The terms of the Release state that:

> The benefits of this Release are being offered to employees who meet all of the following conditions:

6

> All regular full time salaried and hourly employees at
> Holnam's Tijeras, New Mexico plant who are not offered or
> do not accept a transfer or employment with the Buyer.
> Defendant's Memorandum, Exhibit 1.4.

Thus, review under the *de novo* standard the court finds that
Defendant had no obligation to pay Plaintiff severance benefits in
this case.    Further, any denial cannot be "arbitrary and
capricious."

## ERISA Preempts Plaintiff's Contract and Implied Covenant Claims

ERISA broadly preempts state law claims when they relate to
employee benefit plans.    ERISA's clause regarding "other laws"
Supersedure" provides:

> Except as provided in subsection (b), the provisions of this
> subchapter and subchapter III of this chapter shall supersede any
> and all State laws insofar s they may now or hereafter relate to
> any employee benefit plan described in section 1003(a) of this
> title and not exempt under section 1003(b) of this title.
> 29 U.S.C. Sec. 1144.

The Tenth Circuit in Willmar Electric Service, Inc. v. Cooke
held that a state law "relates" to" an employee benefit plan, "if
it has a connection with or reference to such a plan."   Willmar
Electric v. Cooke, 212 F.3c 533, 536 (10th Cir. 2000) cert. denied
*citing* Shaw v. Delta Air Lines, Inc., 436 U.S. 85, 96-97 (1983).

A reading of Plaintiff's complaint clearly shows that his
alleged state law claims relate to his employee benefit plans.   In
asserting jurisdiction, Plaintiff alleges that this action is
brought pursuant to ERISA.    In Count II for breach of contract

7

Plaintiff asserts he was "harmed by said failure to pay severance pay." Complaint, para. 15. In Count III for violation of the implied covenant of good faith and fair dealings, Plaintiff alleges he was "maliciously deprived..of his right to collect severance pay..." Complaint para. 17.

This issue has been settled by the Tenth Circuit Court of Appeals. In <u>Pitman v. Blue Cross & Blue Shield</u>, 24 F.3d 118, 120 (10th Cir. 1994), the Court specifically affirmed a district court's summary judgment on Plaintiff's claims for "breach of contract and implied covenant of good faith and fair dealing." The Court rejected Pitman's argument, noting that the United States Supreme Court decisions in <u>FMS Corp. v. Holliday</u>, 498 U.S. 52 (1990), <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41 (1987), and <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724 (1985), had increasingly extended the reach of ERISA preemption, "excising these state causes of action from its remedial scheme." <u>Pitman</u>, 24 F.3d at 121; <u>see also</u> <u>Joe McNally v. First Bank System, Inc.</u> 202 F.3d 1067 (8th Cir. 2000)(ERISA preempts contract claim for severance pay).

Plaintiff merely argues that the issue is "fact dependent." Response, p. 5. However, Plaintiff has not offered any facts or evidence to distinguish <u>Pitman</u> from his lawsuit.

As the above findings and rulings are dispositive the court need not address Defendant's other arguments.

8

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant's Motion for Summary Judgment is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions is denied.

**FINALLY, IT IS ORDERED** that Plaintiff's Complaint and all the causes of action therein are dismissed with prejudice.


_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**

9